UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**     Order GRANTING Plaintiff's motion to remand and finding Defendant's motion to dismiss RENDERED MOOT

Before the Court is a motion to remand filed by Plaintiff Jan De Peralta ("Plaintiff"), *see* Dkt. # 11 ("*Remand Mot.*"), and a motion to dismiss filed by Defendant Andrew Vratil, *see* Dkt. # 12 ("*MTD*"). Defendants Fox Restaurant Concepts, LLC and TFK Pasadena LLC (together with Defendant Vratil, "Defendants") oppose Plaintiff's motion to remand, *see* Dkt. # 17 ("*Remand Opp.*"), Plaintiff opposes Defendant Vratil's motion to dismiss, *see* Dkt. # 16 ("*MTD Opp.*"), and the parties replied, *see* Dkts. # 18 ("*Remand Reply*"), 19 ("*MTD Reply*"). The Court finds the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. Having considered the moving papers, the Court **GRANTS** Plaintiff's motion to remand and finds Defendant Vratil's motion to dismiss **RENDERED MOOT**.

I.     Background

On September 5, 2017, Plaintiff initiated this action by filing a complaint in Los Angeles County Superior Court. *See* Dkt. # 1-1 ("*Compl.*"). He alleges that, after being hired by Defendants as a kitchen manager and sous chef at the True Food Kitchen restaurant in Pasadena, he became disabled after a knee injury on June 23, 2017. *Id.* ¶¶ 18, 23. After contacting Defendant Vratil, a supervisor, about his need for temporary disability, Plaintiff was eventually informed by Vratil on July 18 that no accommodation would be provided and that he "would be terminated due to his injury." *Id.* ¶¶ 24–26.

In his complaint, Plaintiff asserts various causes of action under California law, including violations of the Fair Employment and Housing Act ("FEHA") and the California Labor Code. *See generally id.* Plaintiff also includes a cause of action for intentional infliction of emotional distress ("IIED") against all Defendants, Vratil included. *Id.* ¶¶ 107–11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
|---|---|---|---|
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

On October 23, 2017, Defendants removed the action to this Court on the basis of diversity jurisdiction. *See Notice of Removal*, Dkt. # 1 ("*NOR*"), ¶ 10. After noting that Plaintiff is a citizen of California for purposes of complete diversity, Defendants further asserted that Defendant Fox Restaurant Concepts, LLC is a citizen of Arizona and Illinois, while Defendant TFK Pasadena LLC is a citizen of Arizona, Illinois, Delaware, Connecticut, and New York. *Id.* ¶¶ 11–15. Defendants acknowledged that Defendant Vratil "is a California citizen," but argued that "his citizenship should be disregarded under the fraudulent joinder doctrine" because "none of the claims asserted in the Complaint can be brought against [him]." *Id.* ¶¶ 16–29. As to the IIED claim in particular, Defendants contended that "[c]ourts have consistently held that termination decisions cannot create liability for an IIED claim" and that the "IIED claim is barred against Vratil . . . by the exclusivity provision of the workers' compensation laws." *Id.* ¶¶ 24–25.

In his motion to remand, Plaintiff argues that Defendant Vratil is *not* a sham defendant because the IIED claim against him is viable. *See generally Remand Mot*. Defendant Vratil in turn moves to dismiss all claims against him. *See generally MTD*.

II.     Legal Standard

Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity of citizenship between the parties, *see* 28 U.S.C. § 1332. For a federal court to exercise diversity jurisdiction, there must be "complete" diversity between the parties and the $75,000 amount in controversy requirement must be satisfied. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806); 28 U.S.C. § 1332(a).

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. *See* 28 U.S.C. § 1441(a). Courts strictly construe the removal statute against removal jurisdiction. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034; *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

III.    Discussion

The Court will first consider Plaintiff's motion to remand because it concerns the Court's jurisdiction over this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
|---|---|---|---|
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

### A. Plaintiff's Motion to Remand

A federal court has diversity jurisdiction if the amount in controversy exceeds $75,000 and the parties to the action are citizens of different states. *See* 28 U.S.C. § 1332(a). Any instance of common citizenship between a plaintiff and defendant "deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). However, an exception to the complete diversity requirement exists where a non-diverse defendant has been fraudulently joined. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Under the Ninth Circuit's approach to this doctrine, "a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1158 (C.D. Cal. 2009) (citing *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989)). "The failure to state a claim against the non-diverse defendant must be 'obvious according to the well-settled rules of the state.'" *Padilla*, 697 F. Supp. 2d at 1158–59 (quoting *United Comput. Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002)). The party seeking removal bears the burden of proving the joinder was fraudulent, and there is a general presumption against fraudulent joinder. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *see also Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) ("There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion.").

Plaintiff argues that Defendants cannot meet this "heavy burden" to show that Vratil is a sham defendant; that his IIED claims are not preempted by California's Worker's Compensation Act ("CWA"); that "personnel actions that are avoidable and unnecessary to legitimate business functions are not protected conduct"; and that Vratil's conduct "clearly rises to the level of extreme and outrageous conduct[] necessary under California law to make the requisite showing for an IIED claim." *Remand Mot.* 6:13–22 (internal quotation marks omitted).

#### i. WCA Preemption

Under the WCA, "employees are entitled to compensation for injuries caused by their employment only in proceedings before the Worker's Compensation Appeals Board." *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1072 (C.D. Cal. 2016). "Generally, claims for emotional distress caused by the employer's conduct causing distress such as 'discharge, demotion, discipline or criticism' are preempted by the [WCA], even when the employer's acts causing the distress are intentional or outrageous." *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013) (quoting *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
|---|---|---|---|
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

1099 (1992)). Consequently, an employee's IIED claim is generally preempted unless it "exceed[s] the normal risks of the employment." *Corona*, 218 F. Supp. 3d at 1073 (quoting *Fretland v. County of Humboldt*, 69 Cal. App. 4th 1478, 1492 (1999)).

The parties dispute whether or not IIED claims premised, like Plaintiff's, on alleged discriminatory conduct are preempted by the WCA. Both sides cite to cases in support of their differing positions. *See, e.g.*, *Light v. California Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017) ("[W]e are unwilling to abandon the longstanding view that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity."); *Paleg v. Kmart Corp.*, No. CV 17-00899-SVW-SP, 2017 WL 2974923, at *3 (C.D. Cal. July 11, 2017) (distinguishing between IIED claims based on alleged discrimination and those based on other conduct and concluding that the WCA's exclusivity provision does not bar the former); *Duran v. DHL Express (USA), Inc.*, No. CV 15-09965-BRO (Ex), 2016 WL 742864, at *8 (C.D. Cal. Feb. 24, 2016) ("Due to the limited nature of this allegation, and the fact that the alleged conduct occurred during the normal course of the employer-employee relationship, the workers' compensation exclusivity rule applies."). The court in *Ferrer v. Host International, Inc.*, No. LA CV16-06798 JAK (ASx), 2017 WL 902848 (C.D. Cal. Mar. 7, 2017), articulated the distinction between cases where courts have found preemption and those where they have not. The *Ferrer* court wrote, "Some California district courts have distinguished *Miklosy* [in which the California Supreme Court found an IIED claim preempted by the WCA] and have held that IIED claims based on alleged discrimination are not preempted by worker's compensation statutes because discrimination is not a normal part of the workplace." *Id.* at *5 (internal quotation marks omitted). However, "district courts have also recognized that IIED claims based on alleged discrimination are preempted when the alleged wrongful conduct 'occurred during the course of the employer-employee relationship, while [the employer] provided feedback and supervision to Plaintiff.'" *Id.* at *6 (quoting *Plummer v. Tesoro Ref. & Mktg. Co.*, No. CV 16-02044 SJO (JEMx), 2016 WL 3180327, at *4 (C.D. Cal. June 3, 2016)). In other words, to avoid preemption for an IIED claim based on discrimination, the allegations must include something *more* than mere personnel decisions like "demotions, promotions, criticism of work practices, and frictions in negotiations." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987). They must also include allegations of discriminatory conduct that goes beyond that which would ordinarily be found in the workplace.

Although scant, Plaintiff's allegations against Vratil satisfy this requirement. Plaintiff alleges that, following his injury, he reached out to Vratil to tell him that "he would be disabled for six-to-eight weeks, but was expected to fully recover and that during that time he would be happy to perform intra-office work." Compl. ¶ 24. Despite the fact that Defendants' employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
|---|---|---|---|
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

handbook permitted disability leave, Plaintiff allegedly received no reply. *See id.* ¶¶ 21, 24. Several days later, Plaintiff claims that he "was contacted by Defendant Mr. Vratil and told he would be terminated due to his injury and that Plaintiff '*had to understand [they] did not want an injured employee from a business perspective*, that [he] could not be paid and wasn't eligible for FMLA leave.'" *Id.* ¶ 26 (emphasis and alternations in original). Vratil allegedly rejected Plaintiff's idea that he perform "light work duty," as another injured employee had previously done. *Id.*

That is the extent of the allegations against Vratil: that he terminated Plaintiff as the result of an injury and that he ignored Plaintiff's requests to continue working on light duty, despite offering that option to another worker. *See id.* ¶ 108. However, such assertions are sufficient to remove the IIED claim from the WCA's preemptive effect because they imply disability discrimination: "that [Plaintiff's] termination was the product of discrimination on the basis of his disability." *Charles v. ADT Sec. Servs.*, No. CV 09-5025 PSG (AJWx), 2009 WL 5184454, at *3 (C.D. Cal. Dec. 21, 2009); *see also Barsell v. Urban Outfitters, Inc.*, No. CV 09-02604 MMM (RZx), 2009 WL 1916495, at *4 (C.D. Cal. July 1, 2009) ("Because this claim is based on allegations of disability discrimination, there is a non-fanciful possibility that the workers' compensation exclusivity provisions do not bar [the plaintiff's] claim against [the defendant]."). Merely being terminated is not outside the normal working experience. However, courts have found that "IIED claims are not preempted by the [WCA] when they involve separate discrimination claims, *such as allegations that an employer discriminated against the plaintiff by refusing to provide medical leave for a disability*." *Vanderhule v. Amerisource Bergen Drug Corp.*, No. SACV 16-2104 JVS (JCGx), 2017 WL 168911, at *4 (C.D. Cal. Jan. 17, 2017) (emphasis added). Here, Plaintiff alleges that he was denied both accommodation and medical leave. Such alleged experiences "exceed[] the normal risks" of employment, *Fretland*, 69 Cal. App. 4th at 1492, and thus shield Plaintiff's IIED claim from CWA preemption.[1]

        ii.     *Extreme and Outrageous Conduct*

However, even if Plaintiff's allegations manage to avoid CWA preemption, he must still plead a prima facie IIED claim to demonstrate that the cause of action against Vratil is non-fanciful.

---

[1] Furthermore, although not raised by the parties, the Court notes that "an affirmative defense reaching the merits of a case should generally not provide the basis for a finding of fraudulent joinder. . . . Defendants' [CWA] defense is intertwined with the factual allegations of Plaintiff's employment relationship, and thus should not form the basis of a finding that [Vratil] was fraudulently joined." *Charles*, 2009 WL 5184454, at *4.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
|---|---|---|---|
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

To maintain a claim for IIED, "[a] plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 744–45 (2002). The first prong "requires a showing of conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004) (quoting *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998)).

Here, Plaintiff has alleged discriminatory conduct, and that Vratil "terminated [him] in such a callous and cold manner [that] it rises to the level of actionable IIED." *Remand Mot.* 11:1–2. However, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" do not rise to the requisite level of extreme or outrageous conduct. *Helgeson v. American Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1094 n. 7 (S.D. Cal. 1999); *see also id.* at 1095 ("All of the actions submitted by plaintiff are every-day management decisions. . . . Even if these decisions were improperly motivated, they fall far short of the necessary standard of outrageous conduct beyond all bounds of decency."); *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000) ("Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress."). Even if motivated by discriminatory animus, Vratil's allegedly cold and callous actions and comments cannot be considered so outrageous as to justify an IIED claim. *See, e.g.*, *Lurie v. Konica Minolta Bus. Sols. U.S.A.*, No. 16-CV-00787 RGK (JCx), at *4 (C.D. Cal. Apr. 11, 2016) ("Plaintiff has no IIED claim against the remaining Individual Defendants because supervisors and managers may not be held personally liable for making personnel decisions, even if the conduct is deemed discriminatory."); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002) (citing *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 61, 79–80 (1996)) ("Terminating an employee for improper or discriminatory reasons, like many other adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress."). Since all Plaintiff alleges are adverse employment actions, he cannot maintain an IIED claim against Vratil even if those decisions were tainted by a discriminatory motive.

Ultimately, the shortcomings of Plaintiff's allegations do *not* necessarily mean that his IIED claim is fanciful and that therefore Vratil was fraudulently joined. "[I]n other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7740 PSG (PLAx) | Date | February 6, 2018 |
|---|---|---|---|
| Title | Jan De Peralta v. Fox Restaurant Concepts, LLC et al. | | |

liability, even where plaintiff's claim appeared 'relatively weak.'" *Barsell*, 2009 WL 1916495, at *7 (quoting *Asurmendi v. Tyco Elecs. Corp.*, No. C 08-5699 JF (PVT), 2009 WL 650386, at *5 (N.D. Cal. Mar. 11, 2009)). Furthermore, Plaintiff could cure the insufficiencies of his complaint through amendment—a possibility that has led courts to remand similar cases. *See, e.g.*, *Burris v. AT & T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006).

Although Plaintiff's IIED claim is weak as currently pleaded, it might be improved through amendment. There is a "non-fanciful possibility a state court would conclude" that Plaintiff's complaint states a plausible claim against Vratil. *Barsell*, 2009 WL 1916495, at *9. Accordingly, Vratil is *not* a sham defendant, and because he and Plaintiff share California citizenship, complete diversity does not exist, and the Court cannot exercise subject matter jurisdiction over this action. The Court therefore **GRANTS** Plaintiff's motion to remand the case.

### B. Defendant's Motion to Dismiss

Because the Court does not have subject matter jurisdiction over this action, it finds Defendant's motion to dismiss **RENDERED MOOT**.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand and finds Defendant's motion to dismiss **RENDERED MOOT**.

The action is hereby **REMANDED** to state court.

**IT IS SO ORDERED.**